State v. Allen.

# STATE OF MISSOURI, Respondent, v. WILLIAM ALLEN, Appellant.

### St. Louis Court of Appeals, May 13, 1902.

1. Criminal Procedure: INFORMATIONS: FALSE AFFIDAVIT: CRIMINAL PLEADINGS. Where an information is filed against a defendant charging him with making a false affidavit, and the charge in the affidavit was that the accused persons "stole, took and carried away certain property with felonious intent to steal," and the information negatives this affirmative charge by this allegation, to-wit: "Whereas, in truth and in fact, the said persons, or any of them stole, took and carried away," etc. *Held*, that the allegation as to the falsity of the charge was properly made.

2. ———: EVIDENCE. It is not prejudicial error to admit mere accumulative evidence of a fact.

3. ———: INFORMATION: INSTRUCTION. An instruction is erroneous which tells the jury, in a charge against defendant for making a false affidavit charging certain persons with larceny, that the defendant well knew that neither Becker, Smith nor Dyer had stolen the property, as alleged by defendant in his affidavit, when he made the affidavit, and if the jury believe they had not stolen it they should find the defendant guilty.

4. Instruction: JURY: COURT. And the court can not thus relieve the jury of the task of finding that defendant swore to what he knew to be false, but the law imposes this duty on the jury and will not accept the finding of the court on that issue in lieu of the finding of the jury.

5. Criminal Procedure: INSTRUCTION: ERROR. It is error to give an instruction to a jury in a criminal case, which is too wordy and too much involved to be readily comprehended by the average juryman.

Appeal from St. Louis Court of Criminal Correction.—*Hon. Willis Clark*, Judge.

REVERSED AND REMANDED.

State v. Allen.

*Henry A. Baker* and *R. Lee Mudd* for appellant.

(1)   We consider it not to be material that the negative allegation should be proved merely conjunctively, for the term "stealing" includes larceny of itself.   State v. Schaltz, 71 Mo. 504.   (2)   This statute (section 2036), for all the purposes of this point, requires the application of the same principles as perjury; because using substantially the same defining words, and is *sui generis et in pari materia* with it.   In fact, such swearing, if in writing, may be prosecuted as perjury, the same as swearing to property for taxation.   State v. Carpenter, 65 S. W. (Mo.) 255; R. S. 1899, sec. 2033.   This being plainly true, the iron-clad rule of the necessity of negativing all that may be disproven, and of proving all, in manner and extent, as negatived, unalterably prevails.   State v. Frisby, 90 Mo. 533; State v. Blize, 111 Mo. 471; Wharton's Cr. Ev., sec. 131.   (3)   Reversible error was committed in admitting in evidence the order, or so-called contract, of the Turn Verein, and Dyers Gas Company to permit the placing of its gas regulators, instead of those of defendant Allen's gas association, upon the promise of the prosecuting attorney to show Allen's personal connection with that matter.   This practice is permissible in civil cases, but not in criminal cases, and the distinction has been well marked in the law.   Abbott's Trial Brief (in Crim. Cases), p. 198; State v. Thomas, 99 Mo. 257.   Recollecting also, that this "connection" was never shown, and no instruction eliminating or limiting the relevancy of such evidence given.   People v. Millard, 53 Mich. 63; Rushing v. State, 25 Tex. App. 607; Zell v. Comm, 2 Crim. L. Mag. 22; 37 Leg. Int., 387.   (4)   The court's instruction No. 4 is prejudicially wrong, at least in a part of its definition of the word "corruptly," as done "for the purpose of securing undue advantage or gratification."   This word "undue," in this connection, is entirely too latitudinary, and is consistent with motives not criminally corrupt; and for

this reason the proper definition of this word in defendant's refused instruction No. 3, as "done with an intent to acquire, or cause some profit, or gain unlawfully," should have been given. State v. Ragsdale, 59 Mo. App. 603. (5) The former part of this definition, as done "unlawfully, willfully, in abuse and violation of the rights of others," is too general, and indefinite, and does not fairly qualify the latter part above quoted. Abbott's Law Dictionary, word "Corrupt." This is especially true, when the word willful, in its criminal sense, was not here properly defined, as it is in defendant's said refused instruction No. 3. See the definition of this word, in its criminal import, in State v. Grassle, 74 Mo. App. 316; 2 Thompson on Trials, sec. 2185. (6) "An honest oath, taken under advice of counsel, is not perjury." Wharton's Cr. L. (10 Ed.), sec. 1249. In fact this element of advice of counsel relates especially, to good faith, or absence of malice; and not to the element of probable cause. Sharpe v. Johnston, 76 Mo. 673. (7) In order to find him guilty it must be proven that he "knowingly, and willfully swore falsely," etc. Martin v. Miller, 4 Mo. 47. (8) "It is not perjury where the oath, according to his own lights, he has probable cause to believe." Destys Crim. L., sec. 75b. It is to be presumed that he believed the truth of the information, or advice he received; and thus this matter of his belief need not be affirmatively shown. Townshend on Slander and Libel (4 Ed.), sec. 429. (9) Now as to the refused instructions, we can not fail to reflect that, in misdemeanor cases, as in felonies, it is reversible error if the court refuses to give legal instructions asked by the defendant on points not covered by the instructions of the court. State v. Mathers, 49 Mo. App. 237.

*Henry A. Clover, Jr., Seddon & Blair* and *Nathaniel S. Brown* for respondent.

(1)   The information is sufficient.   State v. Marshall, 47 Mo. 378; State v. Buck, 43 Mo. App. 443; State v. Mc-Daniels, 40 Mo. App. 356; State v. Sweeney, 56 Mo. App. 409; State v. Breitweiser, 88 Mo. App. 648.   (2)   Section 2036, Revised Statutes 1899, defines a crime distinct from that of perjury.   State v. Marshall, supra; State v. Boland, 12 Mo. App. 74.   (3) The court correctly defined the words "corruptly" and "willfully," in instruction No. 4.   State v. Stein, 48 Minn. 466; United States v. Edwards, 43 Fed. 67; State v. Ragsdale, 59 Mo. App. 603; Abbott's Law Diction-ary, title, "Corrupt;" Bouvier's Law Dictionary, title, "Will-fully;" Black's Law Dictionary, title, "Willfully;" State v. Grassle, 74 Mo. App. 316.   (4)   Instruction No. 5 is a cor-rect statement of the law as to the duties of defendant Allen in consulting his attorneys.   It was his duty to state all the material facts both to attorney Holtcamp and Assistant Prose-cuting Attorney Johnson.   Sharpe v. Johnson, 76 Mo. 663; McGarry v. Railroad, 36 Mo. App. 340.

BLAND, P. J.—The charging part of the information on which appellant was convicted is in substance as follows:

"That. William L. Allen, the appellant, 'did then and there unlawfully, willfully, corruptly, and falsely, before Al-fred J. Wagenman, the clerk of said court (meaning of the court of criminal correction in St. Louis city) under oath, then and there duly administered by said clerk, as aforesaid, voluntarily, corruptly, falsely, willfully, and knowingly make a certain false affidavit, statement, and complaint,' etc., 'in words and figures as follows:'   The sworn complaint then follows and in which the substantial charge is 'that James L. Smith, H. J. Becker and B. A. Dyer in the city of St. Louis, on the eighth day of September, 1900, four gas regulators,

and one lot of quicksilver, and fittings—all of the value of one hundred and fifty dollars, the property of the Gas Consumers' Association of the United States (a corporation), unlawfully, and feloniously did then and there steal, take and carry away, with the intent, then and there, to deprive the owner of the use thereof, and to convert the same to their own use,' etc.

"Then after making usual descriptive averments the information, proceeds with the negative assignments thus: 'Whereas, in truth and in fact, the said James L. Smith, H. J. Becker and B. A. Dyer, or either of them, did not,' etc., 'steal, take and carry away, with the intent then and there to deprive the owner of the use thereof, and to convert the same to their own use' (the said property mentioned) ; 'and so he, the said William L. Allen, at the time of making the aforesaid affidavit, well knew; and well knew the same to be wholly false, untrue and corrupt,' etc."

A demurrer was filed to the information which the court overruled. Appellant also objected to the introduction of any evidence on the ground that the information charged no offense. This was also overruled.

The facts disclosed on trial were substantially as follows: Appellant was manager of the St. Louis branch of a corporation known as the Gas Consumers' Association of the United States, hereinafter for convenience designated the Allen company. The persons, Becker, Smith and Dyer, charged of larceny by the affidavit of appellant, were employees of another corporation in St. Louis called the Gas Consumers' Savings Company, of which Dyer was the manager and which for convenience will be hereafter designated as the Dyer company. Both companies were engaged in the business of supplying gas consumers with regulators designed to economize the expenditure of gas. The regulators were called gas regulators and were used by being attached to the gas pipes. The companies were competitors in business. Dyer's company sold their

regulators to its customers or rented them with the privilege of purchasing. Allen's company rented its regulators. They both solicited each other's customers and when one would succeed in displacing the regulators of the other it would take them out and return them to the owner. In the spring of 1900 complaints arose between them about alleged shortages in part of the appliances of the regulators. At which time, Smith, a witness for the State and an employee of the Dyer company, testified that he and Allen had a conference about the shortage and made a verbal arrangement about these shortages. Allen, however, denied that any such arrangement was made. Exchanges of regulators between the two companies continued without objection until about June 20, 1900, when Allen refused to receipt the Dyer company for returned regulators. But the evidence tends to prove that the practice of exchanging and returning regulators continued until and after Allen had protested against the Dyer company interfering with the regulators of his company.

The Allen company had placed four regulators in the Social Turnverein Hall. Early in September, 1900, the Dyer company procured a written contract or order from the Turnverein for four of its regulators. Dyer sent Smith and Becker to the Turnverein with the four regulators about September 26, 1900, with an order to put them in. When they arrived the janitor in charge told them to go ahead and take out the Allen regulators and to put in the others. This they did. The four Allen regulators taken out they returned to the office or shop of the Dyer company, where they remained for some six or eight days, when Becker was sent with them, and seven or eight other Allen regulators, to the office of the Dyer company, with orders to deliver them. When he arrived there was no one in the office and he gave the following account of what took place:

"I took a buggy and took them there, and when I got there

I took a 45 light and one of 80 or 100 light, and took them up on the elevator to the Gas Consumers' office . . . at No. 720 Olive street. And after I had them up there in the office I went downstairs to get the others and when I got down to the ground floor I met Mr. Allen and he asked me whether I had brought up some regulators, and I said 'Yes, I have two upstairs already' and he says, 'I don't believe I want to take those regulators'; and he asked me whether I had any more, and I said 'Yes, I have got eight in the buggy.' He looked at the regulators and then I went upstairs and I gave him a note of the gas regulators I had out in the buggy and also those I had taken upstairs. The names and numbers where we had gotten them from and the size of each regulator."

Among those regulators were the four that had been taken from the Turner Hall. Allen went out and looked at the regulators, then he made Becker go upstairs and get the two that he had already taken up and he (Allen) took Becker's name and address and also Mr. Smith's name and address, and then Becker took the regulators downstairs and went to the Dyer company's place of business and left them there.

Allen gave as a reason why he would not receive the regulators that he could not identify them, could not tell that they belonged to his company. There is evidence in the record, however, which tends to show that the regulators were branded and could be identified by their brands. Some telephoning was had between Allen and Dyer about the regulators after Allen heard that they had been taken out of the Turner Hall and after Becker had offered to deliver them. Allen consulted a reputable attorney, Mr. Holtcamp, about the matter, which in the end led to a visit by himself and Mr. Holtcamp to the office of Richard Johnson, assistant prosecuting attorney, and the facts about the taking out of the machines were related to Johnson by Allen. Allen, however, omitted to state to either Holtcamp or Johnson that the Dyer company had offered to return the regulators after they had been taken

out of the Turner Hall.   After this, Allen produced a witness before Johnson who testified to the fact of the taking out of the regulators by Becker and Smith.   Johnson then told Allen he could have a warrant on his affidavit charging Dyer, Smith and Becker with the larceny of the regulators, warning him, however, that he would be civilly liable if the affidavit turned out to be untrue.   Thereupon, with the view of having Becker, Smith and Dyer prosecuted for larceny of the machines, Allen made the affidavit in question.

I.   The specific objection made to the information by appellant is that it does not substantially set forth negative assignments of statutory perjury.   The charge in the affidavit was that the accused persons "stole, took and carried away the property with felonious intent to steal."   The information negatives this affirmative charge by this allegation, to-wit: "Whereas in truth and in fact the said persons, or any of them, stole took and carried away," etc.   The contention of appellant is that the disjunctive "or" should have been used between the terms "stolen and carried away" in the affidavit imputing to Dyer, Becker and Smith the crime of larceny. They were not charged with merely taking the property away but that they took it away with a felonious intent to convert it to their own use.   Nothing short of proof of this fact would have been sufficient to convict them of the charge imputed by the affidavit.   On the other hand, evidence which would fall short of showing their innocence of the larceny charged, would be insufficient to establish the falsity of the affidavit, and it was proper pleading to allege the falsity of the charge and would have been improper pleading to have disjoined the words in the affidavit which charged the specific offense of larceny.

II.   An objection was made to admitting in evidence the order or contract of the Turnverein and the Dyer company for permission to put in the Dyer company's regulators on the ground that appellant was not a party to the contract and was

not informed of its existence when he made the affidavit. The order or contract was admissible as evidence tending to show under what circumstances the Allen regulators were taken out and the Dyer regulators substituted, as tending to show Dyer, Becker and Smith were not guilty of the larceny charged in the affidavit, proof of which was necessary to be made out by the State to entitle it to a conviction of appellant. Allen's ignorance of the order was a circumstance in his favor on the issue as to whether his affidavit was made in good faith or was willfully false, and the admission of this evidence was not error.

III. The court admitted in evidence receipts of the Allen company for the regulators returned to it by the Dyer company, some of which were signed by Allen and others by Allen's clerk. Those signed by the clerk were objected to by appellant on the ground that Allen was not a party to them. During the period these receipts were given, it is agreed by the evidence that the practice of both companies was for the one to remove the machines of the other and to deliver them to the owner. The clerk's receipts were merely accumulative evidence of this fact and were not prejudicial.

IV.    The third instruction given for the State is as follows:

"If each and all the jurors believe and find from the evidence that in the city of St. Louis and State of Missouri, and on any date within one year next prior to the twelfth day of January, A. D. 1901, defendant did unlawfully, willfully, corruptly, falsely and voluntarily make before the clerk of this court a certain affidavit, as set out in the information, charging that James L. Smith, H. J. Becker and B. A. Dyer, in the city of St. Louis, on the eighth day of September, 1900, four gas regulators, one lot of quicksilver and fittings, all of the value of one hundred and fifty dollars, all the property of Gas Consumers' Association of the United States (a corporation) then and there being found, unlawfully, felon-

State v. Allen.

iously did then and there steal, take and carry away, with the intent then and there to deprive the owner of the use thereof, and to convert the same to their own use, and if you each and all further believe and find from the evidence that in truth and fact the said James L. Smith, H. J. Becker and B. A. Dyer, did not on said eighth day of September, 1900, at said city of St. Louis, or on any other day or at any other place, steal, take and carry away, with the intent then and there to deprive the owner of the use thereof and to convert the same to their own use, four gas regulators, one lot of quicksilver and fittings, nor any regulators, quicksilver fittings, or any other property whatsoever of the aforesaid description, or of any other description, of the value of one hundred and fifty dollars, or of any value whatsoever, the property of the Gas Consumers' Association of the United States, or of any other person or corporation whatsoever, as he, the defendant, at the time and place of making said affidavit, well knew; and if you each and all further believe and find from the evidence that at the time of the making of said affidavit, defendant knew said affidavit to be false, untrue and corrupt, in each and every particular as above predicated in this instruction, then it will be your duty to find the defendant guilty, and unless you and each and all so believe and find from the evidence it will be your duty to find the defendant not guilty."

This instruction, in substance, told the jury that the defendant well knew that neither Becker, Smith nor Dyer had stolen the property when he made the affidavit, and if the jury believed that they had not stolen it they should find the defendant guilty. It may have been very kind of the court to have thus relieved the jury of the task of finding that the defendant swore to what he knew to be false, but the law imposed that duty on the jury and will not accept the finding of the court on that issue in lieu of the finding of the jury.

V.   Instruction No. 5 is too wordy and too much in-

volved to be readily comprehended by the average juryman. Under the evidence we can see no place for this instruction. Appellant admitted that he did not disclose all the facts, in respect to the taking of the property, to his counsel and to the assistant prosecuting attorney. The most material fact, the offer to return the regulators, he admits he did not communicate to either. Having failed to communicate all of the material facts within his knowledge, the advice of counsel furnishes him no excuse whatever for making the affidavit if it was in fact false.

For error in giving instruction No. 3, the judgment is reversed and the cause remanded. *Goode, J.,* concurs; *Barclay, J.,* not sitting.